[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 30, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11818
Non-Argument Calendar
_____

D. C. Docket No. 04-20203-CR-DMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LORENZA E. FLINT,
a.k.a. Lo,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 30, 2005)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Lorenza E. Flint appeals his conviction and 120-month sentence for

conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. After review, we affirm Flint's conviction and dismiss his appeal of his sentence.

## I. FACTS

Flint pled guilty pursuant to a written plea agreement. His agreement specified that he agreed to plead guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and the court must impose a minimum 10-year term of imprisonment, as follows:

> 1. The defendant agrees to plead guilty to the indictment, which count charges the defendant with a conspiracy to possess with the intent to distribute 5 kilograms, or more of cocaine and 50 grams or more of cocaine base, commonly known as "crack," in violation of Title 21, United States Code, Sections 841(a)(1), 846(b)(1)(A)(iii).
> . . . .
> 3. The defendant also understands and acknowledges that the court must impose a minimum term of ten years of imprisonment and may impose a statutory maximum term of imprisonment of up to life, followed by a term of supervised release of at least 5 years and up to life. In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $4,000,000.

It is undisputed that 5 kilograms or more of cocaine triggers a ten-year mandatory minimum sentence. See 21 U.S.C. 841(b)(1)(A)(ii).

The agreement also contained a sentence appeal waiver, which provided that Flint waived his right to appeal "any sentence imposed . . . or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum

2

permitted by statute or is the result of an upward departure from the guideline range . . . ." His appeal waiver also stated that Flint waived claims that the Sentencing Guidelines were unconstitutional or that facts found by the sentencing court were not admitted by him or found by a jury, as follows:

> This appeal waiver includes a waiver of the right to appeal the sentence on the ground that the sentencing guidelines are in any respect unconstitutional, or on the grounds that any fact found by the Court at sentencing was not alleged in the indictment, admitted by the defendant, found by a jury, or found beyond a reasonable doubt.

At the change-of-plea hearing, Flint indicated that he had read the indictment and plea agreement, discussed them with his counsel, and was satisfied with counsel's representation. He then acknowledged that he understood that: (1) he was pleading guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base; (2) the court must impose a mandatory minimum sentence of ten years' imprisonment; and (3) he had a right to appeal his sentence, but was waiving that right by agreeing to the terms of the plea agreement.

Six months after he pled guilty, but prior to being sentenced, Flint filed a motion to set aside his plea agreement and to proceed to trial. Flint's motion claimed that he had not been given an adequate opportunity to review the charges and the evidence against him, and that therefore he did not have the material

3

information necessary to make an informed decision to plead guilty. At a hearing on the motion, Flint also asserted that he had desired to withdraw his plea soon after the plea hearing. The government responded that: (1) it had already tried Flint's codefendants and would now have to retry the conspiracy case separately against Flint if the motion was granted; (2) the government was unsure whether Ross, a key witness and Flint's son, now would be willing to testify against his father; (3) Flint had waited six months after his guilty plea, until after the PSI had been prepared, to move to withdraw the plea; (4) the government was in the process of preparing for an upcoming trial that imposed significant time constraints on the same agents and assistant United States Attorneys involved in Flint's case; and (5) the government would need additional time to file a superseding indictment and "work up" the case against Flint. The district court denied Flint's motion, finding his plea was knowing and voluntary, as follows:

> This defendant chose to plead guilty. There was a full plea colloquy. There was no indication he did not understand . . . at the time of the plea colloquy.
> I find it was a knowing and voluntary plea. I don't agree that he was not aware of the facts giving rise to this case . . . .
> He did choose to plead guilty. He chose to waive his appellate rights. And I believe it is a circumstance of his having a change of heart. I don't see any other reason for a – for him to change the plea. My only hesitation is I do have a belief [that] people ought to get their day in Court. However he did negotiate his plea agreement. I think the Government is in a different posture now in trying to present a case. I believe that

4

judicial resources would be wasted if we tried this case again. The Government would be prejudiced both in terms of time and money.

But I think the greatest prejudice is in their ability to present the case. Without some reason other than he's had a change of heart, I don't think there's a basis to withdraw the plea.

The district court sentenced Flint to 120 months' imprisonment, which was the mandatory minimum statutory sentence, under 21 U.S.C. § 841(b)(1)(A)(ii), for conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base. This appeal followed.

## II. DISCUSSION

On appeal, Flint challenges the district court's denial of his motion to withdraw his guilty plea and also argues that the district court erred in imposing a ten-year mandatory minimum sentence. After review, we affirm Flint's conviction and dismiss his appeal of his sentence based on Flint's valid sentence appeal waiver.[1]

### A.    Motion to Withdraw Guilty Plea

Flint contends that the district court's denial of his motion to withdraw his

---

[1] We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion and will reverse only if the district court's decision is arbitrary and unreasonable. United States v. Najjar, 283 F.3d 1306, 1307 (11th Cir. 2002). Whether a defendant has knowingly and voluntarily waived his right to appeal his sentence is a question of law that we review de novo. United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir. 1993).

guilty plea was arbitrary because the government offered nothing but "conclusory assertions" to support a denial.  Specifically, Flint points out that he did not wait six months to seek to withdraw his plea, but that he had wished to withdraw it on the day after it was entered.

Rule 11 provides that "[a] defendant may withdraw a plea of guilty. . . after the court accepts the plea but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  When deciding whether to grant a motion to withdraw a guilty plea, "the district court may consider the totality of the circumstances surrounding the plea . . . includ[ing] (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." United States v. Buckles, 843 F.2d 469, 471-72 (11th Cir. 1988) (internal citations omitted).

The district court did not abuse its discretion in determining, based on the totality of the circumstances, that Flint failed to provide a fair and just reason for withdrawing his plea.  First, Flint had the close assistance of counsel regarding his plea because he: (1) was assisted by counsel during the plea hearing; (2) acknowledged that he had discussed the case with his counsel; and (3) stated that

6

he was satisfied with his counsel's representation. Second, Flint's plea was knowing and voluntary given that he: (1) had read the indictment and understood the charge against him; (2) had read the plea agreement and understood it; (3) had not been forced to plead guilty; (4) understood that, by pleading guilty, he was giving up several rights; and (5) heard the government's proffer of the case against him.

Although Flint alleged that he was taking blood pressure medication at the time of his plea, Flint does not state what effect the medication had on him, and there is no evidence in the record that Flint was not fully competent during his plea. In fact, Flint stated at the plea hearing that he was not currently "under the influence" of any drug. Further, although Flint claimed that he was not fully informed of the charges and evidence against him, he indicated at the plea hearing that he had read the indictment, understood that he was pleading guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine, knew the penalties for the crime, and had heard the government's proffer of evidence against him.

Third, as the district court found, judicial resources would be conserved by denying Flint's motion because the government had tried Flint's codefendants three months before and would now have to bear the expense of a separate trial.

Although Flint claims that he wished to withdraw his plea one day after he entered it, he does not explain why he then waited six months, until right before sentencing, to file the motion with the district court.[2]   Given the totality of these circumstances, we cannot say the district court's decision to deny Flint's motion to withdraw his plea was arbitrary or unreasonable.[3]

**B.     Sentencing Appeal**

Regarding his sentence, Flint argues that the government stipulated in the plea agreement that Flint was responsible only for 500 grams to 2 kilograms of cocaine.  Based on this alleged stipulation, Flint contends that the district court erred by imposing a ten-year mandatory minimum sentence based on the 5-kilogram amount that was actually charged in the indictment and to which he pled guilty.  Flint argues that the district court was obligated to enforce the stipulation to the lower drug quantity in determining his mandatory minimum sentence, which should have been 60 months under 21 U.S.C. § 841(b)(1)(B)(ii).  Alternatively,

---

[2] Although Flint contends that he told his plea counsel of his desire to withdraw his plea the day after the plea hearing and then told the probation officer approximately five weeks after the plea hearing, Flint did not notify the district court of his alleged desire until just before the sentencing hearing.

[3] The district court also found that the government would be prejudiced by Flint's withdrawal of his plea because, among other things, Ross, Flint's son and a key witness, may now be unwilling to testify against his father.  Because the defendant has not satisfied the other Buckles factors, we need not rely on this factor.  See Buckles, 843 F.2d at 472 n.3 & 474; see also United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987) (stating that, where defendant has failed to satisfy first two factors, the court need not give considerable weight to the last two factors).

Flint argues that, even if the district court was not obligated to enforce the government's stipulation, the court erred under United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), by engaging in judicial fact-finding of the amount of cocaine. The government responds that Flint's knowing and voluntary sentence appeal waiver precludes him from raising all of these issues on appeal.

First, Flint's asserted basis for circumventing his appeal waiver is not supported by the record. The government did not stipulate as to drug quantity. Rather, the plea agreement states that the government will recommend a lesser drug quantity, but that this is not binding on the court.[4] Thus, this alleged claim provides no basis for avoiding the sentence appeal waiver. We also conclude that Flint's appeal waiver is valid and binding on Flint.

In his written plea agreement, Flint waived his right to appeal his sentence unless the sentence exceeded the statutory maximum or was the result of an

---

[4] Specifically, paragraph 11 of the plea agreement states:

> The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:
> (a). Quantity of narcotics: That the quantity of controlled substance involved in the offense, for purpose of Section 2D1.1(a) and (c) of the Sentencing Guidelines and [sic] is between at least 500 grams but less than 2 kilograms cocaine, that would result in a base offense level of 26.

The government explained that this provision was included in the plea agreement in the event Flint qualified for a substantial assistance downward departure and was no longer subject to the statutory minimum sentence. However, Flint did not cooperate with the government and thus did not qualify for such a departure.

upward departure. In addition, the sentence appeal waiver precluded Flint from raising Apprendi/Booker claims. Appeal waivers are generally enforceable when they are knowingly and voluntarily entered. See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997). We review do novo the knowing and voluntary nature of the waiver. United States v. Bushert, 997 F.2d 1343, 1350 (11th Cir. 1993). We will enforce a sentence appeal waiver provision contained in a plea agreement if the government demonstrates either that (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) "it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id. at 1351. In addition, we have held that "the right to appeal a sentence based on Apprendi/Booker grounds can be waived in a plea agreement," and "[b]road waiver language covers those grounds of appeal." United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir.), cert. denied, 126 S. Ct. 416 (2005).

Flint's sentence appeal waiver is valid and enforceable. The district court specifically questioned Flint about the sentence appeal waiver during the plea colloquy, and Flint acknowledged that he understood that he was relinquishing his right to appeal his sentence except under limited circumstances. Furthermore, the sentence appeal waiver contained an express waiver of constitutional challenges to

10

his sentence, including the grounds that any fact found by the court at sentencing was not admitted by him or found by a jury.

Flint argues that his appeal falls within the upward departure exception to the sentence appeal waiver. We disagree. The district court's imposition of the 120-month sentence did not constitute an upward departure from the guidelines range. Rather, it was the applicable guidelines sentence.

Pursuant to U.S.S.G. § 5G1.1, where the statutory minimum sentence exceeds the guidelines range, the statutory minimum is the applicable guidelines sentence, as follows:

> Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence.

U.S.S.G. § 5G1.1(b). Flint's calculated guidelines range was 78 to 97 months' imprisonment based on his total offense level and criminal history category. Because Flint pled guilty to an indictment that expressly charged the drug quantity of 5 kilograms or more of cocaine, his statutory minimum sentence was 120 months' imprisonment. Pursuant to § 5G1.1(b), because Flint's statutory minimum sentence of 120 months was greater than his guidelines range maximum of 97 months, his guidelines sentence was 120 months' imprisonment. Furthermore, only a sentence exceeding 120 months' imprisonment would have been an upward

11

departure. <u>See</u> U.S.S.G. § 5G1.1 cmt. (explaining that "[i]f the applicable guideline range is 41-51 months and there is a statutorily required minimum sentence of 60 months, the sentence required by the guidelines under subsection (b) is 60 months; a sentence of more than 60 months would be a guideline departure"); <u>see also</u> <u>United States v. Head</u>, 178 F.3d 1205, 1207-08 (11th Cir. 1999) (holding that sentencing range set by U.S.S.G. § 5G1.1(b) is the appropriate point of departure and not the lower alternative guideline range absent a statutory minimum). Thus, the district court did not upwardly depart from the guidelines in imposing the 120-month sentence.

Because Flint knowingly and voluntarily waived his right to appeal his sentence on the grounds asserted in his brief, we dismiss his appeal of his sentence.[5] Accordingly, we affirm Flint's conviction and dismiss the appeal of his sentence.

**AFFIRMED IN PART, DISMISSED IN PART.**

---

[5] Perhaps in another attempt to circumvent his sentence appeal waiver, Flint claims on appeal that the government materially breached the plea agreement when it argued for the ten-year mandatory minimum sentence. We note that Flint did not argue in the district court that the government had breached the plea agreement and has never sought to withdraw his guilty plea on this basis. Indeed, Flint does not go so far as to explicitly argue on appeal that the alleged breach releases him from his appeal waiver. In any event, to the extent this argument can be inferred from his brief, it ignores the provisions in the plea agreement that state: (1) that Flint agrees to plead guilty to an offense involving 5 kilograms or more of cocaine; (2) that the drug quantity recommendation is only for purposes of calculating Flint's base offense level under U.S.S.G. § 2D1.1; and (3) that "[t]he defendant also understands and acknowledges that the court must impose a minimum term of ten years of imprisonment . . . ."